UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MITCHELL G. ZIMMERMAN,

          Plaintiff,

      v.                                            Case No. 23-C-4

WISCONSIN DEPARTMENT OF
CORRECTIONS,

          Defendant.

## ORDER GRANTING MOTION FOR CLARIFICATION AND DENYING MOTIONS FOR DISQUALIFICATION OF JUDGE AND RECRUITMENT OF COUNSEL

      On January 3, 2023, Plaintiff Mitchell G. Zimmerman filed a complaint alleging that numerous individuals violated the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, at the Green Bay Correctional Institution in 2022 by failing to timely process the DOC-2075 forms he had filed. Dkt. No. 1. A DOC-2075 is a form the Wisconsin Department of Corrections (DOC) requires inmates to file in order to request a new religious practice or obtain religious property. *Id.*, ¶16. Plaintiff claims he practices a religion known as the "Hermetic Philosophy" or the "Golden Dawn Tradition." *Id.*, ¶13. His religion requires him to attend Pagan and Eastern services every week, practice on a rug with a six-pointed star and two snakes, post spiritual pictures and symbols on the walls during certain rituals, use various religious oils, use a Black and Gold Alter Cloth, and use Tarot cards. Dkt. No. 10, ¶¶ 9–10, 15–16, 19–20, 23.

      In his original complaint, Plaintiff alleged that between March 2022 and October 2022, he had submitted four DOC-2075 forms requesting to attend Eastern and Pagan services and to

acquire items used in the practice of his religion. Dkt. No. 1. Plaintiff alleged he was told it would take at least nine to twelve months to process his requests. *Id*. Plaintiff claimed that such a lengthy delay was unjustified and constituted a violation of his rights under RLUIPA. *Id*. By way of relief, Plaintiff requested that the Court issue a declaration that the DOC's failure to timely process his requests violates RLUIPA and enter an injunction requiring DOC to set reasonable deadlines for processing such requests. *Id*.

While awaiting payment of his initial partial filing fee and before the Court issued a screening order pursuant to 28 U.S.C. § 1915A(a), Plaintiff filed both an Amended Complaint and a Second Amended Complaint in which he added additional allegations of having filed DOC-2075 forms requesting to attend additional religious services or acquire additional items used in the practice of his religion. Dkt. Nos. 4, 9, & 10. Plaintiff alleged that no decision had been made on any of his requests and that he was thereby prevented from practicing his religion. Dkt. No. 10, ¶18(e). On April 18, 2023, the Court entered a Screening Order for Plaintiff's Second Amended Complaint allowing Plaintiff to proceed on his claims for declaratory and injunctive relief against Corrections Program Supervisor (CPS) Michael Hoffman based on his allegations that by failing to process his requests GBCI was violating his rights under RLUIPA. Dkt. No. 12.

On May 11, 2023, Plaintiff filed a motion for leave to file a third amended complaint, naming the DOC as the proper defendant, and the Court allowed him to proceed on that complaint on May 25, 2023, for the same reasons given in the original screening order. Dkt. Nos. 16, 18–19. The DOC answered the third amended complaint on July 24, 2023, and the Court thereafter entered a scheduling order. Dkt. Nos. 23–24. Under the current scheduling order, the deadline to file a motion for summary judgment based on exhaustion was September 11, 2023; the discovery

2

deadline is December 28, 2023; and the deadline to file summary judgement on the merits is January 28, 2024.  Dkt. No. 24.

On September 8, 2023, the DOC filed a motion to clarify the screening order and for extension of time to file a motion for summary judgment based on exhaustion.  Dkt. No. 28.  The DOC explains that the screening order mentions both the alleged denial of religious services and items <u>and</u> the alleged "refusals to process" DOC-2075.  *Id*.  The DOC asks the Court to clarify which claim was allowed to proceed, arguing that allowing both would be "contradictory," and to extend the deadline to file a motion for summary judgment based on exhaustion to 14 days after the Court's decision.  *Id*.

The Court does not believe its screening order is contradictory.  The refusal or failure to process a request is, in effect, a denial of the request.  Moreover, unless the request is one that the institution is legally required to grant, the delay in processing it causes no harm to a plaintiff.  Implicit in Plaintiff's claim that the DOC failed to timely process his requests to attend religious services and acquire religious objects under RLUIPA is the claim that he was entitled to have those requests granted.  Finally, in addition to his requests for declaratory and injunctive relief concerning the processing of his request, Plaintiff asked the Court to "issue any further orders that it deems necessary to perpetuate justice and equity."  Dkt. No. 19 at 8–9.

Nevertheless, on September 18, 2023, Plaintiff filed a response to the motion, along with a motion to correct the record, disqualify the judge, reconsider, and appoint counsel, clarifying that he only seeks to proceed on the second claim, *i.e.*, the alleged refusals to process DOC-2075.  Dkt. No. 29.  Plaintiff explains that he seeks: (1) a "declaration" that the policies and procedures surrounding the use of DOC-2075 violates RLUIPA (because the DOC routinely and unreasonably delays processing that document); and (2) an "injunction" forcing the DOC to establish deadlines

3

by which DOC-2075 forms must be processed. *Id*. at 1–2. Plaintiff states that he only wishes to challenge the unreasonable delays and the lack of deadlines in processing DOC-2075 through this lawsuit; and that he will pursue the substantive claim to actually procure the services and items needed to practice his religion in a different lawsuit. *Id*. at 14 ("Plaintiff will sue for the substantive issues in another case."). Plaintiff explains that the DOC did not make decisions on his DOC-2075 requests until *after* he filed this lawsuit and served discovery requests (about a year and a half after he initially submitted the requests) and he does not want to have to file a lawsuit following every DOC-2075 request just to get a decision on the document. *Id*. at 6–8. He states that the tenants of his religion change over time and that he plans to file many more DOC-2075 requests in the future to accommodate his religion. *Id*. at 14.

Because Plaintiff does not wish to proceed on a substantive claim to actually attend the religious services and acquire the items he claims are needed to practice his religion through this lawsuit, that claim will be dismissed from the case. Thus, the only claim remaining then is his challenge of DOC policy in connection with routine and unreasonable delays or "refusals to process" DOC-2075 requests. *See e.g., Johnson-Bey v. Lane*, 863 F.2d 1308, 1311 (7th Cir. 1988) (noting that unreasonable delays in making arrangements to practice an inmate's religion, including giving an inmate "the run-around," violates an inmate's religious rights); *see Tanksley v. Litscher*, 723 F. App'x 370, 371 (7th Cir. 2018) ("Under [RLUIPA], if an inmate shows that an institutional policy substantially burdens his religious exercise, then that policy may not be applied unless the institution shows that the policy is the least restrictive means for advancing a compelling state interest."); *see also Williams v. Pollard*, No. 14-CV-148, 2016 WL 5478422, at *3 (E.D. Wis. Sept. 29, 2016) (noting that an inmate can also seek to change DOC policy through RLUIPA). Because an inmate cannot procure special religious services and items without using DOC-2075,

4

the Court can reasonably infer, at this stage, that refusals to process DOC-2075 or unreasonable delays in processing DOC-2075 could substantially burden the practice of an inmate's religion. Accordingly, the Court will grant the DOC's motion to clarify and for extension of time and Plaintiff's motion to correct the record. The DOC may file an exhaustion motion in connection with that claim within 14 days of this order.

Plaintiff also filed a *second* motion for disqualification of the judge and to reconsider. *See* Dkt. Nos. 26 & 29. Plaintiff asserts that the Court has shown bias and is litigating on behalf of the DOC in connection with the DOC's refusal to allow him to use legal loans to correspond with High Priestess Dixie Deerman, who would provide testimony about his religion in this case. Dkt. No. 29 at 3–4. Plaintiff also reiterates that he *does* have an-access-to-the-courts claim based on denial of legal loans to contact the High Priestess. *Id*.

The Court will again deny both motions. First, the Court has a duty to apply the law as it believes it is written. Plaintiff's disagreement with the Court's interpretation of the laws (and the documents he has submitted in support of his argument) does not mean that the Court is litigating on behalf of Defendant. As noted before, Plaintiff cannot seek a new judge simply because he disagrees with the Court's analysis. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Second, the Court acknowledged the possibility that Plaintiff may have an access-to-the-courts claim in connection with the denial of legal loans to contact the High Priestess. *See* Dkt. No. 27 at 3; *see also Owens v. Evans*, 878 F.3d 599, 564 (7th Cir. 2017). But, as noted in that prior order, that claim belongs in a different lawsuit. Plaintiff did not allege an access-to-the-courts claim in the operative complaint in this case, *see* Dkt. No. 19 at 7–8, and he cannot raise that claim through motion practice, as he has been attempting to do. Further, even if he could raise a new claim through motion practice, an access-to-the-courts claim requires an allegation of an

"actual injury." *Hyatt v. Lukas*, No. 20-1114, 2022 WL 17582276, at *3 (7th Cir. Dec. 12, 2022); *Hertel v. Miller-Lewis,* 695 F. App'x 957, 961 (7th Cir. 2017) (to implicate an access-to-the-courts violation, Plaintiff must show that "he was kept from filing a complaint or that he actually lost a case because of the defendants' intentional actions."); *Ortiz v. Downey,* 561 F.3d 664, 671 (7th Cir. 2009) (to state a valid access-to-the-courts claim, Plaintiff must minimally allege both that prison officials failed to help him prepare and file meaningful legal papers, and that he lost a valid legal claim or defense because of the challenged conduct.).

Plaintiff does not plausibly allege that the denial of legal loans to retrieve the High Priestess' testimony has caused any "actual injury." This case is on-going, meaning that Plaintiff has not yet lost a valid claim or defense in this case. And there is no indication that he lost a valid legal claim or defense in a different case in connection with the lack of the High Priestess' testimony. Moreover, given that Plaintiff has now abandoned the substantive claim in this lawsuit, the specific tenants of his religion and whether it requires Pagan and Eastern services every week, a rug with a six-pointed star and two snakes, spiritual pictures and symbols, religious oils, a Black and Gold Alter Cloth, and Tarot cards (i.e., the testimony the High Priestess would provide), is no longer relevant to the issues in this case such that the Court must immediately get involved through this lawsuit. Thus, the Court will deny the motions to disqualify and reconsider.

Finally, Plaintiff has also requested counsel. He states that he has attached proof of his attempts to acquire counsel on his own to no avail. Dkt. No. 29 at 15. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been

effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citing *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007)). The Court may also consider the merits and what is at stake when deciding whether to allocate scarce pro bono counsel resources. *Watts v. Kidman*, 42 F.4th 755, 765 (7th Cir. 2022). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. "The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Id*. When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490–491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual

7

capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491.

As for the merits of the case and what is at stake, the Court considers the claims the inmate has asserted, the extent of damage or harm he claims to have sustained, and, to the extent it appears from the record, the evidence supporting the allegations. *Watts*, 42 F.4th at 766. At the same time, the Court must be careful in assessing the merits at the early stages of litigation and remain mindful of the fact that the plaintiff is not an attorney and may have difficulty communicating the facts giving rise to his claim and the extent of his injuries. *Id.*

The Court is satisfied that Plaintiff made reasonable attempts to recruit counsel on his own. *See* Dkt. No. 30-1 at 57–60. But the Court will not recruit counsel at this time. The Court does not believe that this case is too complex for Plaintiff to handle on his own. Plaintiff states that he is a seasoned litigator and suing the DOC "is kinda his thing." Dkt. No. 29 at 12. And consistent with his assertion, Plaintiff's filings in this case so far have been clear, coherent, and organized; and show that he is a competent litigator who knows the relevant law and how to advocate for himself. Plaintiff's competence to litigate this case is further demonstrated by his assertion that he has been conducting discovery and has been able to get decisions on some of his DOC-2075 requests through submission of discovery requests. Because Plaintiff's filings thus far have been clear and coherent, the Court does not have any concerns about his ability to continue conducting discovery or advocating for himself through dispositive motions.

Further, under Federal Rule of Civil Procedure 33, Plaintiff may serve interrogatories (written questions) to clarify Defendant's current policies and procedures surrounding the processing of DOC-2075. Under Rule 34, Plaintiff can ask for papers that Defendant may have in its possession that supports their explanation of the current policies and procedures. And, under

8

Rule 36, Plaintiff may serve requests for admissions to narrow down what is at dispute. The guide the Court sent with the screening order, along with the information attached to the scheduling order, also provides more information on how to conduct discovery. *See* Dkt. Nos. 12, 24. At this time, the Court does not believe that this case is too complex for Plaintiff to handle on his own; therefore, the Court will deny his motion to appoint counsel without prejudice.

**IT IS THEREFORE ORDERED** that Defendant's motion for extension of time to file a motion for summary judgment based on exhaustion and clarification of the screening order, Dkt. No. 28, is **GRANTED**. The clarification is as noted, *supra* at 3–4. Defendant may file a motion for summary judgment based on failure to exhaust administrative remedies **within 14 days of this order**.

**IT IS FURTHER ORDERED** that Plaintiff's motion, Dkt. No. 29, is **GRANTED-IN-PART and DENIED-IN-PART**. Plaintiff's motion for correction of the record is **GRANTED**, and his motion to disqualify the judge, to reconsider, and to appoint counsel are **DENIED**.

Dated at Green Bay, Wisconsin this 1st day of November, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge